UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| JOHN DOE, | ) | CASE NO. 1:19CV02619-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| -vs- | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| LAKE ERIE COLLEGE, et al., | ) | |
| , | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on two motions: (1) the motion of Defendants Lake Erie College (the "College") and Brian Posler, Bille Dunn, Kimberly Robare, Giles Davis, Faria Huq and Nichole Kathol (the "Individual Defendants") (collectively, "Defendants") for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c) (Doc. 19), and (2) Plaintiff's motion to amend the complaint (Doc. 32.)  Oppositions and replies to the motions have been filed.  Accordingly, the motions are ripe for consideration.

Having considered the parties' arguments and applicable law, the Court hereby ORDERS that the motion for judgment on the pleadings is GRANTED and this matter shall be DISMISSED under Rule 12(c).  The Court further ORDERS that the motion to amend the complaint is DENIED. The reasons for the Court's rulings are fully explained herein below.

I.      **STATEMENT OF FACTS**

Plaintiff's complaint against Defendants arises out of his dissatisfaction with Lake Erie's review of sexual assault allegations filed against him, which ultimately resulted in his expulsion.

Plaintiff, proceeding under the pseudonym John Doe, was enrolled as a graduate student at Lake Erie College, and defendant Jane Roe was enrolled as an undergraduate student. Plaintiff had almost finished with the Masters in Business Administration (MBA) program at the time he was expelled. He was an employee of Lake Erie College.

Plaintiff and Defendant Roe had sex in Plaintiff's on-campus apartment in November, 2018. The next day, Roe filed a formal complaint with the school. Roe claimed that she was intoxicated at the time the sexual activity occurred.

Based on Roe's formal complaint, Lake Erie College convened a Judicial Conduct Board to investigate the reported violations of the Lake Erie College Code of Conduct, which culminated as an administrative hearing on December 5, 2018. At the conclusion of the investigation, the hearing panel found Plaintiff responsible for violating multiple codes of conduct, including: (1) Disorderly Conduct; (2) Alcoholic Beverages; (3) Assault; (4) Sexual Harassment; (5) Non-Consensual Sexual Contact; and (6) Non-Consensual Sexual Intercourse. Plaintiff was expelled based upon these violations on December 7, 2018.

Plaintiff timely appealed the decision of the Judicial Conduct Board and, after full review of the record by Lake Erie College's Vice President for Student Affairs and Title IX Coordinator, the expulsion was affirmed. A second appeal was initiated by Plaintiff, which was considered by the President of Lake Erie College. Again, the Board's decision was upheld.

Plaintiff filed this action on November 19, 2019, alleging 21 counts. For the facts underlying Plaintiff's legal claims, he alleges that he never received a copy of Plaintiff's statement to the Judicial Conduct Board, never had the opportunity to see the Title IX file, and never learned about what any witnesses said about him. He further alleges that he never had an opportunity to question Roe in any way about the content of her statements. He contends that although he

provided the College with the names of witnesses who knew of Roe pursuing Plaintiff for sexual activity, including one witness who was in the next room on the night in question, no one from the college ever questioned Plaintiff's witnesses.  Plaintiff argues that police reports filed against him by Roe include that she never said no to sexual activity or asked Plaintiff to stop, and a criminal case was never filed against him.  Plaintiff complains that Lake Erie College did not investigate Roe for false reporting.  According to Plaintiff, the College never provided an explanation of the evidence they used against him during the hearing or appeal.  He was merely informed that it was found that he was more likely than not responsible for engaging in sexual activity without consent.

II.  **<u>LEGAL STANDARD</u>**

"The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted."  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).  A motion to dismiss tests the legal sufficiency of the complaint.  *See Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 795 (N.D. Ohio, 2012).  The Court accepts as true all well-pleaded factual allegations and construes the complaint in the light most favorable to the plaintiff.  *Id.*  This does not mean, however, that everything in a complaint, or every inference that can be drawn therefrom, must be accepted at face value.  The Court need not accept legal conclusions or unwarranted factual inferences at the motion to dismiss stage.  *Id.*  A complaint must "provide the grounds of [the plaintiff's] entitlement to relief," which "requires more than labels and conclusions."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and alterations omitted).  "[A] formulaic recitation of the elements of a cause of action will not do" to overcome a motion to dismiss.  *Id.*

III.   **DISCUSSION**

A.   **Defendants' Motion for Judgment on the Pleadings under Fed. R. Civ. P. 12(c)**

The Court first assesses the merits of the motion for judgment on the pleadings seeking to dismiss Plaintiff's complaint.  Plaintiff's complaint asserts 10 causes of action.  He brings claims for:

- Count I:  Violation of Title IX
- Count II:  Breach of Contract
- Count III:  Implied Covenant of Good Faith and Fair Dealing
- Count IV:  Breach of Quasi-Contract
- Count V:  Breach of Implied Contract
- Count VI:  Promissory Estoppel
- Count VII:  Breach of Common Law Duty of Fair Disciplinary Process
- Count VIII:  Negligence
- Count IX:  Negligent Infliction of Emotional Distress
- Count X:  Intentional Infliction of Emotional Distress

For the reasons explained herein below, each of Plaintiff's claims fails to state a claim for which relief may be granted.

1.   **Count I**

Title IX provides that, "subject to certain exceptions not relevant here, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. §1681(A).  "Title IX is enforceable through a judicially implied private right of action, through which monetary damages are available."  *Doe v. Miami Univ.*, 882 F.3d 579, 589 (6th Cir. 2018) (quoting *Klemencic v. Ohio State Univ.*, 263 F.3d 504, 510 (6th Cir. 2001)).

The Sixth Circuit has recognized at least four  theories of Title IX liability in cases alleging gender bias in university disciplinary proceedings: (1) erroneous outcome; (2) selective enforcement; (3) deliberate indifference; and (4) archaic assumptions.  *Id.*  The Circuit has also

recognized the viability of a fifth theory, hostile environment, in other contexts, though not in the context of a suit related to disciplinary proceedings.  *Id.* (citing *Doe v. Claiborne County*, 103 F.3d 495, 515 (6th Cir. 1996)).  In this case, Doe pursues only one of these theories – erroneous outcome.

To present a viable claim under the erroneous outcome theory, a plaintiff must allege "facts sufficient to (1) 'cast some articulable doubt' on the accuracy of the disciplinary proceeding's outcome, and (2) demonstrate a 'particularized causal connection between the flawed outcome and gender bias.'" *Doe v. Baum*, 903 F.3d 575, 585 (6th Cir. 2018) (quoting *Miami Univ.*, 882 F.3d at 592).  Here, Doe's argument ostensibly is that he prevails under an erroneous outcome theory because he was subject to unfair procedures that were biased against men.

This Court will assume *arguendo* that Doe has satisfied the first requirement of an erroneous outcome claim and proceed immediately to the second prong.  To allege a particularized causal connection between a disciplinary action and gender bias, the Sixth Circuit has generally required plaintiffs to point to some hint of gender bias in their own proceedings.  *Doe v. Univ. of Dayton*, 766 Fed. Appx. 275, 281 (6th Cir. 2019).  It is not enough to allege that in all of one university's sexual assault investigations during the relevant period, "'the accused was male and was ultimately found responsible.'" *Id.* (quoting *Doe v. Cummins*, 662 F. Appx. 437, 453 (6th Cir. 2016)).  "This prong is satisfied, however, when that same claim is combined with one that 'describes a pattern of the University pursuing investigations concerning male students, but not female students' and a showing that in the plaintiff's own case, the university 'initiated an investigation into him but not' his female accuser." *Id.* (quoting *Miami Univ.*, 882 F.3d at 593).

Here, Doe's complaint is entirely devoid of any plausible connection to gender bias.  For example, Doe does not claim that Lake Erie College engaged in a suspect pattern of pursuing

investigations against males but not females.  Although Doe does generally allege that the college failed to investigate his accuser, he neglects to identify any cause for which his accuser should have been investigated.  Unlike the situation in *Miami Univ.*, where there was an allegation that the accuser herself violated the University's policies by kissing the plaintiff when he was inebriated to the extent that he could not consent,  there is no specific allegation in the complaint here that Roe herself was guilty of violating Lake Erie policies.  Absent such an allegation or any articulation of what line of inquiry an investigation into Roe should have pursued, the lack of an investigation into to the accuser, standing alone, is insufficient to meet the pleading standard for an erroneous outcome claim.

Moreover, although Doe does claim that Roe stated in police report that she never said "no" to sexual activity, he fails to explain how this led to an erroneous outcome, particularly when the evidence before the college was that Roe was inebriated at the time the sexual encounter took place.  Plaintiff repeatedly cites to the police report filed by Ms. Roe after the sexual contact with Plaintiff, claiming that "Roe's statement that she never said no or asked Plaintiff stop" serves as proof that the disciplinary action taken by Lake Erie should be reversed. There are several profound flaws with this argument.  First, this is not the legal standard required to support a viable Title IX erroneous outcome claim.  Second, Roe's full statement reveals that Plaintiff (a graduate student) intentionally fed Ms. Roe (an undergraduate student below the legal drinking age) alcohol until she was too intoxicated to offer any meaningful consent.  (*See* redacted Investigative Supplement.)  Next, as Jane Roe's assertion was that she incapacitated by alcohol at the time of the admitted sexual encounter, Plaintiff violated Lake Erie's consent policy as defined in the Student Handbook. (R. 1-1, Compl., Ex. 1, PageID# 38.)  Further, as an

employee of Lake Erie Plaintiff was strictly prohibited from any sexual contact with any student at the College –regardless of consent. (*Id*., # 30.)

Moreover, this case is distinguishable from the facts in *Miami Univ.*, a case upon which Doe relies, in that the accuser there gave inconsistent statements about whether she consented to sexual activity, potentially warranting further investigation into her credibility.  *Miami Univ.*, 882 F.3d at 592.  There is no allegation here that Roe gave inconsistent statements either to the police, or to the college.  Further distinguishing *Miami Univ.* from this case is the fact that the plaintiff there pled and submitted an affidavit to support a pattern of anti-male gender bias in the university's disciplinary actions, an allegation that is not present here.  *See id.* at 592-593.  Accordingly, Doe has not adequately pled facts that plausibly could have led to an erroneous outcome.

Perhaps recognizing the insufficiency of his pleading, Doe raises in his complaint that the "Me Too" movement was afoot during the relevant time period.  Doe apparently wants this Court to surmise that Lake Erie College must have, or at least might have, been influenced with respect to his disciplinary proceeding by the events in society surrounding that movement.  However, Doe's pleading contains nothing more than pure speculation in this regard.  He presents no evidence of any disciplinary policies instituted at Lake Erie as a result of the "Me Too" movement, let alone any policies that reflect gender bias.  Likewise, he fails to plead any statements or opinions promulgated by school officials that would link the school's actions toward him to the "Me Too" movement.

Indeed, the insufficiency of Doe's allegations with respect to the "Me Too" movement are somewhat similar to the situation in *Dayton Univ.*¸ where the Sixth Circuit held that a student did not allege facts sufficient to support a Title IX claim under an

erroneous outcome theory. In that case, Dayton entered into a resolution agreement with the Department of Education's Office of Civil Rights, agreeing to modify its policies for handling complaints. The plaintiff in that case alleged that his discipline was motivated in part by a desire to avoid further scrutiny and negative publicity. Making a reluctant assumption that the agreement was indeed relevant to the plaintiff's circumstances, the Sixth Circuit nonetheless found that the plaintiff failed to draw a connection in his complaint between Dayton's agreement and his particular case. Accordingly, the Sixth Circuit held that the plaintiff's erroneous outcome claim was insufficiently pled. *Univ. of Dayton,* 766 Fed. Appx. 281-282. Similarly, Doe in this case fails to make even the most tenuous connection between the "Me Too" movement and his own case. He has not alleged any facts or presented any evidence, circumstantial or otherwise, to establish that the college's actions toward him were in any way influenced by that movement, let alone influenced in a way that reflects gender bias. Accordingly, the mere alleged contemporaneous unfolding of the "Me Too" movement and the disciplinary action against Doe is insufficient to sustain his erroneous outcome claim.

For all of these reasons, Doe has failed to plead the necessary facts to support his Title IX claim. Although Plaintiff maintains that he was treated unfairly in his complaint, he does not plead a single fact plausibly connecting the alleged treatment to his gender. Accordingly, because Plaintiff's complaint lacks any factual, non-conclusory allegations that any of the procedural flaws alleged by Plaintiff were motivated by gender bias, Plaintiff's Title IX claim (Count I) against Lake Erie College must be dismissed pursuant to Fed. R. Civ. P. 12(c).

Doe's Title IX claim also must be dismissed against the individual defendants. "Title IX… [does] not authorize suit against school officials, teachers, and other individuals." *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009). The Sixth Circuit concurs, holding that

Title IX does not impose personal liability on individuals, only on recipients of federal funds. *Campbell v. Dundee Community Schools*, 661 Fed. Appx. 884, 888 (6th Cir.2016) (affirming dismissal of a claim for personal liability under Title IX).  This simple fact defeats Plaintiff's Title IX claims against Defendants Brian Posler, Billie Dunn, Kimberly Robare, Giles Davis, Faria Huq and Nichole Kathol.  Moreover, to the extent the claim purports to be against these individuals in their official capacities, it is duplicative of the claim against Lake Erie College, and must be dismissed.

### 2.    Count II

Plaintiff's Count II alleges breach of contract.  As to Lake Erie College, students who are being disciplined "are entitled to only those procedural safeguards which the school specifically provides."  *Kimberg v. Univ. of Scranton*, 411 Fed. Appx. 473, 481 (3d Cir. 2010).  The standard of review by the courts for breach of contract claims in the university or educational setting is narrow.  *Doe v. Univ. of the South*, 687 F. Supp. 2d 755, 755 (E.D. Tenn. 2009).  When assessing a breach of contract claim by a student against an educational institution, a court must "defer to the decisions of the school" unless there is such a substantial departure from accepted academic norms as to demonstrate a lack of professional judgment.  *Tate v. Owens State Cmty. Coll.*, No. 10AP-1201, 2011 Ohio App. LEXIS 2924, at *9 (July 12, 2011) (quoting *Bleicher v. Univ. of Cincinnati Coll. of Med.*, 604 N.E.2d 783 (Ohio App. 1992)).  Where a university makes reasonable efforts to comply with provisions in a handbook, breach of contract claims in the education context fail as a matter of law.  *See e.g., Lemmon v. Univ. of Cincinnati*, 750 N.E.2d 668, 671 (Ohio Ct. Cl. 2001) (finding that the plaintiff's breach of contract claim failed as a matter of law where university instructor failed to adhere to standards of accrediting institution, but the university "made every effort to adhere to its contractual obligations").

9

Here, Plaintiff alleges Lake Erie did not comply with its policies and procedures.  However, the allegations of the complaint do not establish that there was a substantial departure from accepted academic norms in Lake Erie's judicial process, as is required to sustain Plaintiff's breach of contract claim.

With respect to the contractual obligations afforded Plaintiff, The Student Handbook, Conduct Process, Judicial Board Process provides that Lake Erie will undertake the following actions in response to a student's compliant:

**Judicial Board Process**

A Judicial Board is formed when a student is accused of a level 3 offense or if the Director of Student Life or designee deems that a Judicial Board is necessary. A Judicial Board will be formed as the discretion of the Student Life Office based upon the accusations toward a member of the student body.

Board Membership

One student (when applicable), one faculty member and/or one staff member or a combination of faculty and staff; one member will be designated as the secretary who will record the hearing and the decision. Hearings may be visually and audio recorded. The chair will act as the non-voting Chair of the Judicial Board.

1) The Director of Student Life/ or designee schedules a hearing involving the accused student(s), witness(es) and the Judicial Board within five working days after receiving the Incident Report.

2) The accused student, witnesses and members of the Judicial Board receive communication (may be electronic) that will list the date, time and location of the judicial hearing 48 hours prior to the hearing.

3) On the day of the Judicial Board hearing, accused student and witnesses will receive an introduction where they will be refreshed on the Judicial Board process and sign the Honesty Statement.

4) All students involved reserve the right to meet with the Judicial Board. Meetings may take place individually or in a group.

5) The Chair of the Judicial Board reads the charges to the accused student.

6) Student enters a plea for each charge ("in violation" or "not in violation").

7) Board members ask the student involved questions.

8) The accused student answers questions and makes a closing statement, then leaves the room.

9) Board members deliberate directly after the hearing in order to render a decision. The judicial decision will be determined by majority vote (2 votes minimum).

10) The Board renders a written decision to the Director of Student Life/ or designee. The decision must contain rationale.

11) The Director of Student Life/ or designee follows-up with a formal sanction letter within two business days.

12) The accused student has the opportunity to appeal the Judicial Board decision by submitting a written appeal to the Vice President for Student Affairs within 10 business days of receipt of the sanctions letter. Students are only permitted to appeal based on improper judicial procedures or if new evidence has been discovered that is relevant to the case.

The Judicial Board process can be revised and amended if a student is accusing a fellow student of a violation of the Code of Conduct. At that point both the accuser and the accused will have the opportunity to speak with the Judicial Board to provide statements. Witnesses will also be called, when applicable.

A student may appeal a judicial sanction or judicial board decision based on if new information is founded or if information was not originally presented during the judicial hearing. The written appeal can be directed to the Vice President for Student Affairs within 10 business days of the original decision; or if new information regarding the case has been presented the student has 10 business days to bring that information to the Vice President for Student Affairs. The Vice President for Student Affairs may assemble a judicial committee to review the appeal and the original case and make a determination. (Emphasis sic)

(R. 1-1, Compl., Ex. 1, Student Handbook, PageID # 40-41)

11

In response to this contractual language, Plaintiff first argues that Lake Erie was "aware of the possibility that Roe falsely reported" the alleged assault based upon a victim statement given by Roe shortly after the assault (i.e., Plaintiff's "she didn't say no" defense).  As noted above, even if Roe did not say  the word "no," this does not obligate Lake Erie to investigate her for "false reporting" as her incapacitation due to alcohol consumption constitutes a lack of consent as defined by the Student Handbook.  (*Id*., PageID# 38.)  Further, as an employee of the College, Plaintiff was prohibited from *any* sexual interaction with a student – regardless of consent.  (*Id*., PageID# 30.)

Next, Plaintiff argues that Lake Erie should have provided him with the "rationale for a hearing."  It is inconsistent in light of the allegations in his own complaint for Plaintiff to argue to this Court that he did not understand that he was being investigated for sexual misconduct.  Indeed, Plaintiff admits in his complaint that he was informed that Roe made a complaint of sexual assault less than 24 hours after the incident. (R. 1, Compl. ¶ 29.)

Next, Plaintiff claims that he was entitled to "equal access to information that will be used in informal and formal meetings and hearings."  There are no allegations in Plaintiff's complaint that Roe was given greater access to any information used in any meetings or hearings.  Thus, no violation of this provision of the Student Handbook occurred.

Plaintiff further alleges that he was not provided with redacted copies of statements and reports.  Plaintiff, however, never asked for access to such information until after the hearing and exhaustion of his administrative appeals.  (R. 8, Answer, ¶ 33.)

Finally, Plaintiff makes the claim that Lake Erie could not apply a preponderance of the evidence standard because "Plaintiff was not given the opportunity to defend himself." (R. 33, Resp., PageID # 381)  However, Plaintiff's own complaint demonstrates that, less than 24 hours

after assault, he was informed by Lake Erie that Ms. Roe had reported that Plaintiff "got me drunk and manipulated me into having sex."  The following day, Plaintiff met with Lake Erie's Director of Student Life, Kimberly Robare, and defended himself against the allegations.  A full academic disciplinary investigation was then initiated, during which Plaintiff was interviewed, permitted to offer evidence on his own behalf, and defend his actions.  After the conclusion of the investigation and hearing, Plaintiff was afforded two separate appeals to impartial reviewers. (*See generally*, Compl. and Exhibits. )  These admitted facts do not support Plaintiff's bald assertions, unaccompanied by supporting facts, that Lake Erie did not weigh the evidence or apply a preponderance of the evidence standard.

Plaintiff in his response to the motion for judgment on the pleadings also relies upon several law review articles, and the "suggestions" reached by the authors of these articles as to how colleges should conduct student disciplinary hearings.  While these articles may provide editorial commentary on the state of student discipline in higher education, they have no place in the determination of whether Plaintiff has plead a viable breach of contract cause of action against Lake Erie as a matter of Ohio law.

In all instances, even the allegations in the complaint indicate that Lake Erie substantially met its obligations under the Student Handbook.  Ohio law, however, places an even lower burden on educational institutions. While the contractual relationship between student and college is governed by the "college or university catalog, handbook, and/or other guidelines supplied to the students," colleges need not strictly adhere to those policies. *See Tate*, 2011 WL 2685664 at *3 (T]he court is to defer to the decisions of the school unless it can find 'such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.'" (quoting *Bleicher*, 604

13

N.E.2d at 788))). "When a university's adherence to a particular disciplinary policy is questioned, [the Sixth Circuit] generally ask[s] only whether the university abused its discretion during the disciplinary process." *Faparusi* , 711 F. App'x at 277. Asked another way, did the university apply the rules in a reasonable manner? *Id.* In the case at bar, none of the conduct alleged by Plaintiff clears this high hurdle. The breach of contract claim against Lake Erie College must be dismissed under Rule 12(c).

Moreover, there was never a contract between Plaintiff and Defendants Brian Posler, Billie Dunn, Kimberly Robare, Giles Davis, Faria Huq, and Nichole Kathol. Plaintiff does not dispute this fact. In the absence of such a contract, Plaintiff's claim for breach of contract against these Defendants fails. *Doe v. Case W. Reserve Univ.*, No. 1:17-CV-414, 2017 U.S. Dist. LEXIS 142002 (N.D. Ohio Sep. 1, 2017).

  **3.**   <u>**Count III**</u>

Plaintiff's claim in Count III is for breach of an implied covenant of good faith and fair dealing. Plaintiff's claim must be dismissed because Ohio courts do not recognize such a claim in situations involving colleges and students. *See Valente v. Univ. of Dayton*, 438 Fed. Appx. 381, 385-385 (6th Cir. 2011).

In *Valente*, a law student brought an action against the University of Dayton asserting breach of contract and various tort claims, including breach of the covenant of good faith and fair dealing. The Sixth Circuit held that the student's claim for breach of the covenant of good faith and fair dealing failed, and explained that such a contention has no merit because, except in situations involving insurance contracts, Ohio courts have been reluctant to allow tort remedies for breaches of such duties. The Sixth Circuit stated, "In fact, when addressing a contractual dispute between a school and its former employees and students, the Ohio Court of appeals held that

'[t]here is no separate tort cause of action for breach of good faith that is separate from a breach of contract claim." *Id.* (citations omitted). Based upon this precedent, Plaintiff's claim for breach of the implied covenant of good faith and fair dealing fails as a matter of law, and must be dismissed.

### D.    <u>Counts IV and V</u>

Plaintiff's Breach of quasi-contract and breach of implied contract claims both fail because there is a valid and enforceable written contract – the Student Handbook – which defines the nature and extent of Lake Erie's disciplinary procedures. Given the existence of this contract, Plaintiff is precluding from also maintaining actions for breach of quasi-contract or implied contract. *See Cook v. Home Depot U.S.A., Inc.*, No. 2:06-cv-571, 2007 U.S. Dist. LEXIS 15679 at *12-13 (S.D. Ohio Mar. 6, 2007) (holding that Ohio law does not allow parties to seek damages under quasi-contractual theories of recovery when a contract governs the relationship.).

Ohio and federal case law state that a relationship between a university and a student is contractual and the terms of such a contract are found in the college or university catalog, handbook, and/or other guidelines supplied to the students. *Lewis v. Cleveland State Univ.*, No. 10AP-606, 2011 Ohio App. LEXIS 1029 (March 15, 2011). "Indeed, 'there cannot be an express agreement and an implied contract for the same thing existing at the same time.'" *DuBrul v. Citrosuco N. Am., Inc.*, 892 F. Supp. 892, 2011 Ohio App. LEXIS 1029 (March 15, 2011); *see also Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789, 797-798 (N.D. Ohio 2015).

Here, Plaintiff argues generally that his proceedings were unfair, in violation of Lake Erie's duty to treat Plaintiff "in a fair and consistent manner pursuant to the Student Handbook and common law principles of fairness." Doc. #1, Complaint, ¶ 105. But, "i[n] light of the governing objective standard, we may not accept as sufficient Doe's subjective claim of an unfair proceeding

that reached the wrong conclusion.  Nor may we derive an ideal of fairness by analogy to the procedural protections applicable in courts of law."  *Univ. of Dayton*, 766 Fed. Appx. At 285.  The Student Handbook governs the relationship between Plaintiff and Lake Erie College.  The written contract defeats Plaintiff's breach of quasi-contract and beach of implied contract in their entirety.

### 4.    Count VI

Plaintiff's claim in Count VI for promissory estoppel likewise fails.  As discussed above, the Student Handbook outlines the contractual relationship between Plaintiff and Lake Erie College.  Promissory estoppel is unavailable as a cause of action when an enforceable contract governs the relationship between the parties and the actions for which damages are sought.  *See Spartan Technology, Inc. v. Util-Link, LLC*, 28 Fed. Appx. 684, 691-692 (6th Cir. 2007).  As this is the situation here, Plaintiff's promissory estoppel claim must be dismissed.

### 5.    Count VII

Plaintiff's Count VII fails because there is no common law duty in Ohio to ensure a fair disciplinary process.  Plaintiff alleges in his complaint that Lake Erie violated his procedural due process rights by denying him fair and impartial investigators and adjudicators and by restricting his ability to cross-examine witnesses.

In the school disciplinary context, courts hold that an accused student must at least receive the following pre-expulsion: (1) notice of the charges; (2) an explanation of the evidence against him; and (3) an opportunity to present his side of the story before an unbiased decisionmaker.  *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 565-66 (6th Cir. 2011) (citing *Goss v. Lopez*, 419 U.S. 565, 581 (1975)).  "Disciplinary hearings against students . . . are not criminal trials, and therefore need not take on many of those formalities." *Flaim v. Med. Coll. Of Ohio*, 418 F.3d 629, 635 (6th Cir. 2005).  Although a university student must be

afforded a meaningful opportunity to present his side, a full-scale adversarial proceeding is not required.  *See Id.* at 640.  The focus, rather, should be on whether the student had an opportunity to "respond, explain, and defend," and not on whether the hearing mirrored a criminal trial. *Id.* at 635 (quoting *Gorman v. Univ. of R.I.*, 837 F.2d 7, 13 (1st Cir. 1988)).  Plaintiff here was afforded each of these rights.

In his complaint, Plaintiff admits that he was afforded a hearing at which time he was given the opportunity to explain and defend himself.  (Doc. #1, Complaint, ¶ 36.)  He was further afforded two separate appeals to have his claim re-considered by neutral third parties (*Id.*, at ¶¶ 44-47.)  While Plaintiff complains that he was not afforded the opportunity to confront Ms. Roe during these proceedings, there is no Lake Erie College policy which affords him such rights.  (Doc. #1-1, Page ID #34-43, Lake Erie College Student Handbook.)

To the extent that Plaintiff's complaint can be read to assert a due process claim, such a claim is also legally deficient.  Fourteenth Amendment due process and fundamental fairness issues do not apply to private college student policies and procedures. *Ray v. Wilmington Coll.*, 667 N.E.2d 39, 41 (Ohio App. 1995) (citing *Geraci v. St. Xavier High Sch.*, 13 Ohio Op.3d 146 (Ohio App. 1978)) ("[P]rivate educational institution's disciplinary proceedings are not subject to the Fourteenth Amendment's due process clause.")

Recently, the Northern District of Ohio dismissed a substantially-similar action against Case Western Reserve University.  *See John Doe v. Case W. Reserve Univ., et al.*, No. 1:14CV2044, 2015 U.S. Dist. LEXIS 123680 (N.D. Ohio Sept. 16, 2015) (Boyko, J.) (granting the defendants' motion to dismiss various federal claims arising out of CWRU's hearings and findings concerning allegations of sexual misconduct).

This Court also rejected efforts to circumvent Title IX jurisprudence through pleading of alternative claims.  *See Faparusi*, 2017 WL 759024.  Because the Fourteenth Amendment due process requirements do not apply to private educational institution's disciplinary proceedings, to the extent that Plaintiff has pled a due process claim, the claim shall be dismissed.

### 6.    <u>Count VIII</u>

Plaintiff has asserted a negligence claim in addition to his breach of contract, promissory estoppel and/or quasi contractual claims.  Plaintiff's claim for negligence is based on Lake Erie's breach of an alleged duty "to conduct a fair and unbiased disciplinary process."  (Doc. #1, Complaint, ¶ 123.)  Here, Plaintiff's negligence claim is merely a restatement of his breach of contract claim.  Plaintiff asserts that Lake Erie College owed him a duty arising out of the duties set forth in the College's Student Handbook.  The existence of a contract action precludes the opportunity to present the same case as a tort claim.  A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breached a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed.  *See Wright v. Bank of Am. N.A.*, 517 Fed. Appx. 304, 307 (6th Cir. 2013).  Thus, Plaintiff's negligence claim based upon a duty arising from Lake Erie College's policies is barred because the alleged duties are contractual duties, not separate and independent duties created by common law that would exist even if no contract existed.  *See Schaumleffel v. Muskingum Univ.*, No. 2:17CV463, 2018 U.S. Dist. LEXIS 36350, at *55-56 (S.D. Ohio March 6, 2018) (dismissing negligence claim against university where the university's duties towards the student were spelled out in the student handbook and code of conduct).

For example, in *Valente*, 689 F. Supp. 2d at 924, the Court held that "[n]one of these actors had any duty to Plaintiff which was allegedly breached except for duties imposed on them by their roles in carrying out the contractual relationship between the parties." *Id*. at 924.  When the Court dismissed the claims against the University of Dayton, it stated that none of the agents "had any duty to Plaintiff which was allegedly breached except for duties imposed on them by their roles in carrying out the contractual relationship between the parties." *Id*.; *see also Doe v. Case W. Reserve Univ.*, 2017 U.S. Dist. LEXIS 142002, at *35 (recognizing that Plaintiff's negligence claim based upon a duty arising from "obligations delineated in CWRU's policies" is barred because the alleged duties are contractual duties, not separate and independent duties created by common law); *Doe v. Brown Univ.*, 166 F. Supp. 3d 177, 196 (D. R.I. 2016) (dismissing negligence claim, because it was based on the same duty as contract claim).

The individuals who participated in Plaintiff's disciplinary proceedings on behalf of Lake Erie College were performing duties as required by the College's disciplinary process.  It is not appropriate for Plaintiff to use a negligence claim in this context.  Further, Plaintiff's claim for negligence is based on Lake Erie's alleged breach of an alleged duty in following its policies during its disciplinary proceedings under Title IX.  This claim must also fail as Title IX does not create negligence liability.  "Title IX does not create negligence liability on the part of educational institutions." *Rosa H. v. San Elizario Indep. Sch. Dist.*, 106 F.3d 648, 657 fn.4 (5th Cir. 1997).  A Title IX claim cannot be based on negligence nor upon what a school should have known, but instead must be based on intentional conduct or deliberate indifference. *See Peer ex rel. Doe v. Porterfield*, No. 1:05CV769, 2007 WL 9655728, at *6 (W.D. Mich. Jan. 8, 2007); *see also Wright By and Through Wright v. Mason City Cmty. Sch. Dist.*, 940 F. Supp. 1412, 1419

(N.D. Iowa 1996) (holding the Supreme Court "explicitly demands more than mere negligence to create liability" for a violation of Title IX; it requires an "intent to discriminate").

As Title IX does not permit a claim under a negligence theory, Plaintiff cannot allege a breach of an alleged duty when Lake Erie conducted its disciplinary proceedings and investigations under Title IX.  Therefore, as any claim by Plaintiff for breaching an alleged duty related to Lake Erie's policies is governed by contract law, Plaintiff's negligence claim must therefore be dismissed.

Finally, a claim for negligence within the university-student context "is essentially one of educational malpractice… [and such a] claim is not recognized in the state of Ohio." *Lemmon,*, 750 N.E.2d at 672.; *see also Baker v. Oregon City Schs. Bd. Of Edn.*, No. L-11-1109, 2012 Ohio App. LEXIS 850, at *4 (March 9, 2012) ("the claim of negligence was in fact a claim of educational malpractice, which is not a cognizable claim under Ohio law"); *Jefferson v. Univ. of Toledo*, No. 12AP-236, 2012 Ohio App. LEXIS 4205, at *6-7 (Oct. 16, 2012) (dismissing negligence claim); *Denson v. Steubenville Bd. of Educ.*, No. 85-J-31, 1986 WL 8239, at *1 (Ohio App. July 29, 1986) (granting a motion to dismiss an educational malpractice claim).  A judge of this Court has dismissed a similar negligence claim asserted against a private university filed in connection with the expulsion of nursing school students. *Buescher,* 2014 U.S. Dist. LEXIS 65650 (Gaughan, J.). Because Ohio courts do not recognize a cause of action for negligence in the university setting, Plaintiff's negligence claim (Count VII) fails as a matter of law and is subject to dismissal.

### 7.  <u>Counts IX and X</u>

Plaintiff's Counts IX and X are for negligent and intentional infliction of emotional distress.  These claims fail as a matter of law for several reasons.

First, Plaintiff's emotional distress claims fail because the existence of a valid contract prevents Plaintiff from maintaining a claim for intentional infliction of emotional distress as his claim is based on the alleged violation of Lake Erie College's contractional obligations. It is well-established that a plaintiff cannot maintain a cause of action for emotional distress caused by an alleged breach of contract. *See Valente*, 689 F. Supp. 2d at 927 (dismissing a student's intentional infliction of emotional distress claim where it was based on the same alleged conduct as his breach of contract claim).

Second, Plaintiff's intentional infliction of emotional distress claim fails because he has not alleged facts to demonstrate that Lake Erie's conduct was "extreme and outrageous." *Doe v. Coll. of Wooster*, 243 F. Supp. 3d 875, 895 (N.D. Ohio 2017). To succeed on these claims, the conduct at issue must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citing *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th Cir. 1999)).

Similar to the College of Wooster, Lake Erie College investigated and disciplined Plaintiff "in response to a claim of sexual assault lodged by another student." *Id.* Lake Erie College held a hearing, considered Plaintiff's appeal, and expelled Plaintiff on the basis of its findings. Although Plaintiff alleges various procedural errors throughout this process, these allegations fall short of the extreme and outrageous pleading requirements for intentional infliction of emotional distress claims.

Plaintiff's negligent infliction of emotional distress claim likewise fails. To state a claim for negligent infliction of emotional distress under Ohio law, a plaintiff must (1) be a bystander to an accident, (2) have reasonably appreciated the peril of the accident, and (3) have suffered serious and foreseeable emotional distress as a result of that recognition or fear of the peril.

*Pearsall v. Chrysler Corp.*, 6th Cir. No. 94-3775, 1996 U.S. App. LEXIS 2794, at \*14-15 (Feb. 2, 1996) (citing Ohio law).  Where a plaintiff fails to allege an accident to which he was a bystander, he has wholly failed to plead a claim for negligent infliction of emotional distress. *Id.* at \*15.  Here, Plaintiff does not allege an "accident" as contemplated by Ohio law , nor does he allege that he was a bystander to any such accident.  Accordingly, his pleading is inadequate to allege a claim for negligent infliction of emotional distress.

For the foregoing reasons, Plaintiff's claims for negligent infliction of emotional distress (Count IX) and intentional infliction of emotional distress (Count X) fail to state a claim upon which relief may be granted.  These claims must be dismissed.

### B.    Plaintiff's Motion to Amend the Complaint

The Court next turns to Plaintiff's motion to amend his complaint.  In determining whether to grant leave to amend, a trial court must consider several factors: (1) undue delay in filing, (2) lack of notice to the opposing party, (3) bad faith by the moving party, (4) repeated failures to cure deficiencies by previous amendments, (5) undue prejudice, and (6) futility. *Mpt., Inc. v. Marathon Labels, Inc.*, No. 1:04 CV 2357, 2005 U.S. Dist. LEXIS 18270 at \*5-6 (N.D. Ohio Aug. 25, 2005).  "A motion for leave to amend may be denied for futility 'if the court concludes that the pleading as amended could not withstand a motion to dismiss.'" *Id.* (quoting *Martin v. Associated Truck Lines, Inc.*, 801 F.2d 246, 249 (6th Cir.1986)).

When seeking leave to amend a complaint, the plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Indeed, where "there is no law to support the claims made," a motion for leave to amend should be denied and the action dismissed.  *Stew Farm, Ltd. v. Nat. Res. Conservation Serv*., 967 F. Supp.2d 1164, 1169 (S.D.

Ohio 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). Here, Plaintiff's motion to amend and proposed amended complaint fail to state claims supported by applicable law and, as a result, his proposed amendments are futile, warranting denial by this Court.

In his amended complaint, Plaintiff has alleged enhanced claims for negligent infliction of emotional distress and intentional infliction of emotional distress. (R. 32-1, Amended Complaint, Counts IX and X, ¶¶ 148, 152.) However, Plaintiff legally cannot support either claim.

The Sixth Circuit does not permit emotional distress claims premised upon a breach of contract – including claims arising from student discipline. *Valente*, 438 Fed. Appx. At 386. Where all of a plaintiff-student's claims arise out of violations of the contract between the student and the university, the student cannot maintain independent tort claims such as those for emotional distress. *Id.* As demonstrated by Plaintiff's own amended complaint, his allegations of emotional distress, whether negligent or intentional, arise from Lake Erie's alleged breach of the Student Handbook. As in *Valente, supra*, Plaintiff cannot maintain an emotional distress claim arising out of a breach of contract. As such, his latest proposed amendment is insufficient to cure the fundamental defects in his claims, rendering the requested amendment futile.

Plaintiff's only other proposed amendment is to Count II of the complaint, his breach of contract claim. This proposed amendment likewise is futile.

the proposed amended complaint, Plaintiff claims breach of contract based upon the following:

> (1) Failing to provide a "fair" disciplinary process;

> (2) Failing to investigate Defendant Jane Roe's "false" allegations;

(3) Failing to articulate a "rationale" for the hearing;

(4) Failing to provide the parties with information to be used in the hearings;

(5) Failing to apply a preponderance of the evidence standard;

(6) Failing to conduct a fair and consistent investigation and hearing; and

(7) Failing to conduct a fair and consistent appeals process.

(R. 32-1, Amended Complaint, Count II).  However, these enhanced claims are insufficient as a matter of law as his complaint demonstrates that Plaintiff was legally afforded process and he fails to plead a contract with the individually named Lake Erie employees.

At most, Plaintiff has alleged and attempted to provide detail to show that Lake Erie did not strictly comply with the policies and procedures laid out in the Student Handbook.  However, as explained herein above, the Sixth Circuit "does not require strict adherence to administrative procedures, rather, courts must consider whether the university abused its discretion in applying the disciplinary grievance procedure." *Faparusi*, 2017 WL 759024 at *2.

In his proposed amendment, Plaintiff admits that Lake Erie interviewed him at least twice during the Title IX investigation process, interviewed multiple witnesses, conducted a Title IX hearing, provided Plaintiff with an opportunity to appeal the hearing outcome, and neutral parties independently considered two separate appeals.  (R. 32-1, Amended Complaint, ¶¶ 36; 45, 47.); *see Doe v. Case W. Reserve Univ.*, 2019 U.S. Dist. LEXIS 74520, at *18 (finding no abuse of discretion where university "substantially followed its procedures set out in the Policy").  Based upon the foregoing case law, and as more fully set forth above, a failure to strictly comply with procedure does not give rise to a claim for relief.  Moreover, to the extent Plaintiff has provided facts to show that the individual defendants' conduct created liability, Plaintiff's contract was not with the individual defendants, and no cause of action against them for breach of contract is

viable.  Accordingly, Plaintiff's proposed amendment fails to state a claim for breach of contract, and he is denied leave to amend his complaint.

IV.     **<u>CONCLUSION</u>**

For all of the foregoing reasons, Defendants' motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) (Doc. 19) is GRANTED and this matter is DISMISSED.  Further, Plaintiff's motion to amend the complaint (Doc. 32) is DENIED, as the proposed amendments would be futile.

DATE: 1/27/21                          _/s/ John R. Adams_____
                                        Judge John R. Adams
                                        UNITED STATES DISTRICT COURT